IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
Miami Division

| | |
|---|---|
| **JAMES MORELLI**<br>3214 Calvert Boulevard,<br>Lusby, MD 20657,<br><br>          *Plaintiff*,<br><br>v.<br><br>**ORIGIS ENERGY USA, INC.**<br>800 Brickell Avenue, Suite 1100<br>Miami, FL 33131,<br><br>**Serve:**<br><br>   **April Boyer, Esq.**<br>   K&L Gates<br>   Southeast Financial Center, Suite 3900<br>   200 South Biscayne Boulevard<br>   Miami, FL 33131,<br><br>          *Defendant.* | Case No. 1:20-cv-23284<br><br>JURY TRIAL DEMANDED |

**CIVIL COMPLAINT FOR EQUITABLE
AND MONETARY RELIEF AND DEMAND FOR JURY TRIAL**

Plaintiff James Morelli brings this civil complaint alleging unlawful discrimination and retaliation against Defendant Origis Energy USA, Inc. for violating the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq*., and the Maryland Fair Employment Practices Act, Maryland Code Ann. Art. 49B, § 15 as amended, (repealed and recodified by 2009 Md. Laws Ch. 120, H.B. 51).

1

## PARTIES

1. Plaintiff James Morelli ("Morelli") is a United States citizen domiciled in Maryland, and he primarily worked for Defendant Origis Energy USA, Inc. from his home in Lusby, Maryland.

2. Defendant Origis Energy USA, Inc. ("Origis") is a Delaware corporation with its principal place of business located in Miami, Florida.

## JURISDICTION AND VENUE

3. This Court has jurisdiction under 28 U.S.C. § 1331 because Morelli's federal discrimination and retaliation claims arise under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*, and 28 U.S.C. § 1367 because Morelli's state law claim arises out of the same nucleus of operative facts and form part of the same case or controversy as the federal question claims under Article III of the United States Constitution.

4. This Court has personal jurisdiction over Origis because it maintains its headquarters in this judicial District.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the decision to terminate Morelli's employment occurred within this judicial District.

## FACTUAL ALLEGATIONS

6. After a successful career at Dominion Energy spanning more than thirty years, Morelli joined Origis as a Senior Project Manager starting on or about June 18, 2018. Morelli signed an employment agreement with Origis.

7. As a Senior Project Manager, Origis hired Morelli to lead two projects in La Plata, Maryland initiated by an agreement between Origis and the Southern Maryland Electric Cooperative ("SMECO") to build two Solar sites.

8. At the time of Morelli's hire, Origis had yet to receive the requisite permits from the Charles County government. Morelli worked on putting together bid documents for prospective Engineer Procure and Construct (EPC) bidders.

9. Towards the end of 2018, Morelli was given an additional project by Origis, a solar project to be built in Salome, Arizona called "AZ Solar 1."

10. AZ Solar 1 was a joint venture between Origis and the Western Area Power Authority ("WAPA"). WAPA is one of four power marketing administrations within the United States Department of Energy.

11. On or about March 27, 2019, Origis gave Morelli a good performance review for his performance in 2018. As part of his performance evaluation, Morelli received a $10,000 bonus payment. Morelli only performed six months of work for Origis during 2018.

12. In 2006, Congress enacted the Solar Investment Tax Credit ("SITC") to encourage the growth of solar energy throughout the United States. Congress extended this tax credit in 2015. The SITC provided for a thirty percent federal tax credit claimed against the tax liability of residential (under Section 25D) and commercial and utility (under Section 48) investors in solar energy property. In the case of the Section 48 credit, the business that installs, develops and/or finances the project claims the credit. Eligibility for this tax credit is based on a commence construction standard, and it is slated to decrease starting this year.

13. In order for Origis to reap the SITC for the AZ Solar 1 project, Origis needed the AZ Solar 1 project to begin generating power by the end of the calendar year 2019.

14. Throughout 2019, the AZ Solar 1 project progressively fell behind where it risked not being completed on time due to construction permitting delays and the slow work by Wanzek (EPC). To prevent the project from falling further behind and to ensure timely completion,

Morelli traveled to Arizona on or about November 4, 2019.  From November 4, until December 30, Morelli worked on-site for the AZ Solar 1 project for over twelve hours a day, seven days a week to meet the deadline.

15. By the end of December 2019, Morelli had the AZ Solar 1 project up and running. This allowed Origis to claim approximately $5-6 million in the SITC.  Morelli continued to work on finalizing site work and SCADA commissioning on AZ Solar1 and went back to working on the projects in La Plata, MD from his home in Lusby, MD as directed by Scott Shively.

16. On January 23, 2020 Morelli submitted his self-assessment form for his own 2019 performance evaluation as required by Origis.  Given Morelli's success on the AZ Solar 1 project, Morelli rated himself as successful during 2019.  And he expected a bonus commensurate with the project's success, given that Origis gave Morelli a $10,000 bonus the year prior for only six months of work.

17. According to Origis' own policies, employees were to submit their performance self-assessments by January 31st.  Managers were supposed to hold performance meetings with employees during February, and bonus and salary decisions were to be communicated to employees by the end of March.

18. On or about March 3, 2020, Origis circulated an e-mail regarding the company's response and adaptations to the Coronavirus (COVID-19) throughout the United States.  Origis' e-mail included some guidelines for employees, including following the U.S. Center for Disease Control's recommendations on travel.

19. On or about March 9, 2020, Morelli received an invitation from his supervisor, Scott Shively, for a meeting on March 12, 2020 at 10:00 a.m.  The subject of the calendar invitation was "Performance Review (Morelli)."  Morelli accepted this calendar invitation request.

20. On or about March 11, 2020, Morelli requested that he be excused from attending an upcoming in-person meeting in Austin, TX because of several pre-existing medical conditions he has that make him a high-risk patient for complications of COVID-19. Morelli made this request via e-mail to Shawn McAdams, Human Resources Director, and his supervisor, Scott Shively. Morelli stated that he is almost 60 years old and suffers from a serious autoimmune disease called scleroderma/morphia. Morelli further stated that he had asthma. Morelli stated that he did not want to risk his health on this trip and that he would be happy to go once the virus is gone

21. Shawn McAdams replied to Morelli's request on March 11, 2020 approving Morelli's request not to attend the meeting in Austin, TX. Morelli stated that he could join via Teams, which is a videoconference software. Morelli received no response to this offer. Scott Shively never responded to the email.

22. At approximately 10:00 a.m. on March 12, 2020, Morelli called into what he thought was his 2019 performance evaluation. However, Scott Shively, a Managing Director and Morelli's supervisor, immediately informed Morelli that Shawn McAdams, Origis' Human Resources Director, was also on the teleconference. Shively proceeded to inform Morelli that Origis was terminating Morelli's employment. Shively stated that Origis wanted to transition Morelli's position into more of a finance role. McAdams then stated that consistent with Morelli's employment agreement, his termination would be effective March 20, 2020. Origis never indicated any issues with Morelli's performance or any indication of misconduct.

23. Shortly thereafter, Morelli received a letter of termination dated March 12, 2020 along with a proposed severance agreement. This letter stated that Origis had discovered grounds to terminate Morelli's employment for "cause," but that it elected to terminate Morelli's employment without cause consistent with Morelli's employment agreement.

24. Morelli's employment officially ended on March 20, 2020.

## COUNT I
### Discrimination
### Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*

25. Morelli incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

26. Morelli was a "person" and Origis' "employee" as defined by the ADA.

27. Origis was Morelli's "employer" as defined by the ADA.

28. Morelli has several medical conditions that constitute a "disability" as defined by 42 U.S.C. § 12102(1)(A).

29. Morelli has asthma and scleroderma/morphia, a serious autoimmune disorder. These conditions limit one of more of Morelli's major life activities, including his ability to work and ability to travel.

30. Morelli could and did perform all essential functions of his job with and without reasonable accommodations for his disabilities, including the ability not to attend certain meetings in-person during the COVID-19 pandemic.

31. Origis had notice of Morelli's disability when he requested a reasonable accommodation on March 11, 2020, stating in his e-mail to Shawn McAdams and Scott Shively that Morelli suffered from asthma and scleroderma/morphia.

32. At the time of Morelli's termination, he was qualified to perform his position and meeting his employer's legitimate expectations.

33. Morelli's discharge on March 12, 2020 occurred under circumstances that raise a reasonable inference of unlawful discrimination.

34. Origis discriminated against Morelli when it notified him of his termination on March 12, 2020 because of his disabilities and/or because he requested a reasonable accommodation for his disabilities.

35. Morelli sustained damages as a result of Origis' illegal discrimination in violation of the ADA.

36. Morelli is entitled to such legal or equitable relief as will effectuate the purposes of the ADA, including but not limited to economic and compensatory damages, and reasonable costs and attorneys' fees.

37. Morelli filed a Charge of Discrimination with the Equal Employment Opportunity Commission on June 12, 2020.

38. The Equal Employment Opportunity Commission issued Morelli a Dismissal of his Charge and Notice of Right to Sue on June 23, 2020.

## COUNT II
**Retaliation**
**Americans with Disabilities Act – 42 U.S.C. § 12101,** *et seq*.

39. Morelli incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

40. Morelli was a "person" and Origis' "employee" as defined by the ADA.

41. Origis was Morelli's "employer" as defined by the ADA.

42. Morelli has several medical conditions that constitute a "disability" as defined by 42 U.S.C. § 12102(1)(A).

43. Morelli has asthma and scleroderma/morphia, a serious autoimmune disorder. These conditions limit one of more of Morelli's major life activities, including his ability to work and his ability to travel.

44. Morelli could and did perform all the essential functions of his job with and without reasonable accommodations for his disabilities, including the ability not to attend certain meetings in-person during the COVID-19 pandemic.

45. Origis had notice of Morelli's disability when he engaged in the protected activity of requesting a reasonable accommodation under the ADA on March 11, 2020, stating in his e-mail to Shawn McAdams and Scott Shively that Morelli suffered from asthma and scleroderma/morphia.

46. Morelli suffered an adverse action when Origis terminated Morelli's employment the following day.

47. At the time of Morelli's termination, he was qualified to perform his position and meeting his employer's legitimate expectations.

48. Morelli's discharge on March 12, 2020 occurred under circumstances that raise a reasonable inference of unlawful retaliation.

49. Origis retaliated against Morelli when it notified him of his termination on March 12, 2020 so soon after Morelli engaged in protected activity.

50. Morelli sustained damages as a result of Origis' illegal retaliation in violation of the ADA.

51. Morelli is entitled to such legal or equitable relief as will effectuate the purposes of the ADA, including but not limited to economic and compensatory damages, and reasonable costs and attorneys' fees.

52. Morelli filed a Charge of Discrimination with the Equal Employment Opportunity Commission on June 12, 2020.

53. The Equal Employment Opportunity Commission issued Morelli a Dismissal of his Charge and Notice of Right to Sue on June 23, 2020.

## COUNT III
### Maryland Fair Employment Practices Act
### Discrimination

54. Morelli incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

55. Morelli was a "person" and Origis' "employee" as defined by the Maryland Fair Employment Practices Act.

56. Origis was Morelli's "employer" as defined by the Maryland Fair Employment Practices Act ("FEPA").

57. Morelli has several medical conditions that constitute a "disability" as defined by the Maryland FEPA.

58. Morelli has asthma and scleroderma/Morphia, a serious autoimmune disorder. These conditions limit one of more of Morelli's major life activities, including his ability to work and his ability to travel.

59. Morelli could and did perform all essential functions of his job with or without reasonable accommodations for his disabilities, including the ability not to attend certain meetings in-person during the COVID-19 pandemic.

60. Origis had notice of Morelli's disability when he requested a reasonable accommodation on March 11, 2020, stating in his e-mail to Shawn McAdams and Scott Shively that Morelli suffered from asthma and Scleroderma.

61. At the time of Morelli's termination, he was qualified to perform the essential functions of his position and meeting his employer's legitimate expectations.

62. Morelli's termination on March 12, 2020 occurred under circumstances that raise a reasonable inference of unlawful discrimination.

63. Origis discriminated against Morelli when it notified him of his termination on March 12, 2020 because of his disabilities and because he requested a reasonable accommodation for his disabilities.

64. Morelli sustained damages as a result of Origis' illegal discrimination in violation of the Maryland FEPA.

65. Morelli is entitled to such legal or equitable relief as will effectuate the purposes of the Maryland FEPA, including but not limited to economic and compensatory damages, and reasonable costs and attorneys' fees.

66. Morelli filed a charge with the Maryland Commission on Civil Rights to exhaust his administrative remedies.  The jurisdictional period has not yet run on this claim and it is incorporated herein so as to give notice of it to Origis for purposes of relation back once his administrative remedies are exhausted and he seeks to amend.

## PRAYER FOR RELIEF

Based on the foregoing, Morelli respectfully requests that the Court enter judgment in his favor and award to him the following relief:

    a.    Economic damages, back pay and front pay, in an amount to be awarded at trial;

    b.    Compensatory damages, in an amount to be awarded at trial;

    c.    Attorney's fees and costs;

    d.    Pre-judgment interest;

    e.    Equitable relief; and

    f.    Any other relief that this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Morelli demands a trial by jury for any and all issues proper to be so tried.

Respectfully submitted,

/s/ R. Scott Oswald
R. Scott Oswald (FL Bar # 158437)
Adam Augustine Carter (*pro hac vice forthcoming*)
The Employment Law Group, P.C.
888 17th St. NW, 9th floor
Washington, D.C. 20006
(202) 261-2803
(202) 261-2835 (facsimile)
acarter@employmentlawgroup.com
soswald@employmentlawgroup.com

*Attorneys for James Morelli*